285 So.2d 556 (1973)
Jerry STEWART et al.
v.
ALLSTATE INSURANCE COMPANY et al.
John W. CROWE
v.
The ALABAMA GREAT SOUTHERN RAILROAD COMPANY and T. L. James Construction Co.
Nos. 9563, 9564.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
*557 Robert A. Katz, New Orleans, for John W. Crowe.
Max Zelden, New Orleans, for plaintiffs-appellants, Jerry Stewart, Raymond James Crowe and Rickie Neale Crowe in 9563.
Iddo Pittman, Jr., Hammond, for defendant-appellee, T. L. James Co.
John D. Wogan and Benjamin R. Slater, Jr., New Orleans, for defendant-appellee, The Ala. Great Southern Railroad Co.
Joseph F. Keogh, Baton Rouge, for defendant, Allstate Ins. Co. and Third Party defendants-appellees, Allstate Ins. Co. and John Crowe.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Plaintiffs in these consolidated cases, John Crowe and his guest passengers, Raymond Crowe, Rickie Crowe and Jerry Stewart, appeal dismissal of their claims for damages for personal injuries and related expense sustained and incurred in a grade crossing accident involving an automobile owned and being driven by John Crowe and a train belonging to defendant, Alabama Great Southern Railroad Company (Alabama). The trial court rejected plaintiffs' demands upon finding plaintiff-driver guilty of contributory negligence and his guest passengers guilty of assumption of risk. We affirm.
Subject accident occurred at approximately 8:30 P.M., March 13, 1970, at the intersection of Brown Switch Road and Alabama's tracks. At the scene, Brown Switch Road, a graveled highway, runs from east to west. Alabama's tracks, which run from north to south, lie to the west of and run parallel to U. S. Highway 11, a major traffic route in St. Tammany Parish. The crossing was then in the midst of a construction site for an Interstate 12 overpass crossing of Highway 11. The overpass was being constructed by defendant, T. L. James Construction Company (James). The Crowe vehicle was insured by defendant, Allstate Insurance Company (Allstate). Due to the overpass project, a detour had been built rerouting Brown Switch Road approximately 3 degrees north of its former location. The accident occurred where the detour crossed the railroad.
John Crowe sued Alabama and James. The guest passengers sued Alabama, James and Allstate. Alabama third partied the host driver and his insurer, Allstate.
Plaintiff-driver lived in the vicinity of and was somewhat familiar with Brown Switch Road. On the night in question, he was proceeding westerly along Brown Switch Road in his 1968 Plymouth. His brother, Raymond, occupied the right front seat. Another brother, Rickie, was seated in the right rear of the car, and an acquaintance, Jerry Stewart, occupied the left rear seat.
The night was clear and cool. The moon was shining although the degree of its fullness is a matter of some dispute. The road was dry and somewhat dusty. When Crowe reached a point approximately 300 feet east of the crossing, he stopped to examine his tires thinking he had a flat. At the same time, Floyd Hurlbert, a security *558 guard employed by James to protect James' equipment at the site, approached the scene from the west in a pickup truck. Hurlbert crossed the railroad, noted the stationary vehicle, and stopped to inquire if he could be of assistance. John Crowe informed Hurlbert that there was no trouble but that he, Crowe, was merely checking his tires. Hurlbert then continued a short distance easterly and parked his truck near some of James' equipment. Crowe then reentered his vehicle and drove toward the track and into the side of Alabama's passing freight which completely blocked the crossing. The vehicle struck the 15th or 16th freight car.
It suffices to state that the testimony is in hopeless conflict concerning the circumstances immediately preceding the collision. Jerry Stewart did not appear as a witness. Plaintiff driver and his brothers testified in effect that after John stopped to check his tires, he proceeded westerly at a speed of about 25 miles per hour in a thick cloud of fog or dust from passing vehicles or a combination thereof. Presumably whatever dust was present was due to the passage of Hurlbert's truck inasmuch as all plaintiffs concede no other vehicle passed by. Plaintiffs maintain Crowe could not drive more than about 25 miles per hour because of the rough condition of the road and the fog and dust which reduced visibility to just a few feet ahead of the car's radiator. Plaintiffs did not see the lights of the train which was southbound. Plaintiffs also stated they did not hear the train's whistle or bell because the car windows were up and the radio was playing. It is plaintiff's position that the driver could not see the train under the circumstances and that defendant, Alabama, was negligent in failing to properly mark the crossing. Plaintiffs also contend James was negligent in failing to properly maintain the detour road in good condition and failing to maintain the railroad warning sign for which James was allegedly responsible. Plaintiffs-guest passengers seek recovery from Allstate contending their host driver was negligent in driving at excessive speed, failing to maintain a proper lookout and failing to stop for the passing train.
Floyd Hurlbert testified he was employed by James to prevent vandalism to James' equipment. He stated that as he crossed the railroad traveling east, he noted the lights of the southbound train about one mile from the crossing. He crossed the track, pulled up where the Crowe vehicle was stopped, and inquired if he could be of assistance. After speaking with John Crowe, Hurlbert then drove easterly a distance of about 100 feet and stopped his vehicle on a knoll or rise on the side of the road where some of James' equipment was parked. He turned off the lights of his truck and kept the Crowe vehicle under observation. He explained that he kept the car in sight because he feared the occupants might be bent upon vandalism of some sort. Hurlbert also stated the moon was shining brightly, that there was no dust or fog in the air, and that he could see the Crowe automobile clearly. With the aid of field glasses carried in his truck, he kept the car under close scrutiny because of the driver's ensuing strange behavior. He observed the vehicle in a series of starts and stops or "digging out, stopping suddenly, backing up, digging out again." He noted that this manner of driving continued, the car getting closer each time to the passing train, until finally the automobile struck the train and was flipped over. He stated he could clearly see the car and its brake lights flash on and off each time the driver made one of the numerous sudden stops which preceded the accident.
The trial court accepted Hurlbert's version of the events immediately preceding the collision, and found that John Crowe was guilty of gross contributory negligence. He also concluded the guest passengers were barred from recovery because they assumed the risk of their host's patently dangerous conduct.
Appellants contend the trial court erred in accepting Hulbert's testimony because *559 Hurlbert was allegedly impeached in certain respects. It is contended that Hurlbert incorrectly stated there was a full moon while, in fact, the moon was in a quarter; that the road was smooth and not rough and full of pot holes as contended by plaintiffs; that it was not foggy and dusty, and that the railroad warning sign was in place and not down as shown by plaintiffs and other witnesses. So contending, Appellants invoke the doctrine of FALSUS IN UNO, FALSUS IN OMINBUS, and urge that Hurlbert's testimony should have been completely disregarded. The doctrine invoked by Appellants does not require total rejection of a witness's testimony. Perniciaro v. Travelers Insurance Company et al., La.App., 227 So. (2d) 778. In such instances, it is discretionary with the trier of facts to accept those portions of a witness's testimony which he deems credible. In this instance, another witness besides Hurlbert attested that the surface of the road was in relatively good condition, and that it was not particularly dusty. As to the presence of dust and fog at the time of the accident, Hurlbert was contradicted only by plaintiffs. The doctrine of falsus in uno, falsus in omnibus is a harsh rule which should be applied only with extreme caution. Succession of Viosca, La.App., 202 So.2d 511; Perniciaro v. Travelers, above. Under the circumstances, we find no error in the trial court's refusal to reject Hurlbert's testimony in its entirety.
It is axiomatic that the decisions of the trier of fact upon purely factual matters will not be disturbed in the absence of a showing of manifest error. The rule is so often repeated that no citation of authority is needed in support thereof.
In this instance, the trier of fact believed the testimony of the witness, Hurlbert, and concluded plaintiff-driver engaged in the dangerous game of horseplay of "challenging" the train or seeing how near he could come to the train without actually striking it. We find no error in this conclusion.
It is elementary that conduct of this nature constitutes gross contributory negligence. Such action on the part of an automobile driver bars his recovery irrespective of defendant's negligence, if any.
We also find the trial court rightly held plaintiff-guest passengers assumed the risk of their host's rash conduct. Hurlbert's testimony reveals that the Crowe vehicle made numerous starts and stops in the course of its erratic and irresponsible operation prior to the collision. The inference is inescapable that the guest passengers were fully aware of their host driver's action and intention, nevertheless the record is barren of any evidence of protest on the part of either of the occupants.
The judgment of the trial court is affirmed at appellant's cost.
Affirmed.