943 So.2d 362 (2006)
STATE of Louisiana
v.
Keith MARSHALL a/k/a Gregory Marshall.
No. 2004-K-3139.
Supreme Court of Louisiana.
November 29, 2006.
*364 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Battle Bell, IV, Assistant District Attorney, for Applicant.
Christopher A. Aberle, Mandeville, for Respondent.
WEIMER, Justice.
Charged by the State with possession of cocaine in violation of LSA-R.S. 40:967(C), Keith Marshall (Defendant), also known as "Gregory Marshall," waived a jury and elected a bench trial. The trial court found respondent guilty as charged and sentenced him to five years at hard labor. A multiple bill hearing was held immediately, after which the sentence was vacated. Defendant was then sentenced to 25 years as a fourth offender.
The court of appeal reversed Defendant's conviction and sentence on grounds of insufficient evidence. The court found the trial court's remarks supporting its verdict at the close of the case appeared so internally inconsistent that the remarks undermined the court's credibility determinations and eroded any rational basis for rejecting Defendant's exculpatory testimony *365 in favor of conflicting police testimony. State v. Marshall, 04-1143 (La.App. 4th Cir.11/17/04, 886 So.2d 703)(unpub'd).
Having granted the State's writ application, State v. Marshall, 04-3139 (La.6/16/06), 931 So.2d 360, we reverse that decision because the court of appeal erred by substituting its evaluation of the trial judge's subjective decision-making process for the purely objective inquiry required by Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (An appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")[1]

FACTS AND PROCEDURAL HISTORY
Defendant's present conviction stems from a traffic stop on September 23, 2003, by New Orleans Police Officers Machant Paxton and Curtis Barre, who were conducting a routine patrol on Chef Menteur Highway when they noticed a vehicle with its tail lights out and decided to pull it over. At trial, Officer Paxton testified that he approached the passenger side of the vehicle driven by Defendant after it rolled to a stop, while Officer Barre walked to the driver's side. As Officer Paxton looked through the window, he observed Defendant remove a clear, plastic bag from his pocket and place it on the passengerside floorboard of the vehicle. The officer then opened the door and retrieved the bag which contained several pieces of rock cocaine. According to Officer Paxton, Defendant was the sole occupant of the vehicle, and he identified himself as Keith Marshall.
Officer Barre also testified that Defendant was alone in the car. However, in contrast to Officer Paxton's testimony, Officer Barre stated that it was he who went to the passenger side of the car and stood near the gas tank for safety reasons while Officer Paxton positioned himself on the driver's side. After Officer Paxton asked Defendant for his license, which Defendant could not produce, he walked around to Officer Barre's side of the car, opened the door and retrieved the bag of cocaine. Officer Barre issued the traffic citation to Defendant in the name of Gregory Marshall as opposed to the Defendant's name, Keith Marshall. Because a check of the vehicle's plate number revealed that the car, although not owned by Defendant, had not been stolen, the officers left the vehicle locked and secured on the scene and returned the key to Defendant before taking him to jail for booking.
On the other hand, Defendant claimed there was a passenger in the vehicle when he was pulled over by the police. Defendant testified that the passenger was in fact the owner of the vehicle,[2] who had *366 asked him to drive because he was suffering from severe gas pains and was disabled. According to Defendant, Officer Paxton approached the vehicle on the passenger side while Officer Barre stood on the driver's side. When Officer Paxton opened the door on his side, the passenger, unable to stand, tumbled to the ground. However, Defendant testified that after he was placed under arrest, the officers allowed the passenger, despite his apparent disabilities, to leave the scene in his own car. Defendant further indicated that only Officer Barre approached the driver's side of the car and that he identified himself to the officer as Keith Marshall. Defendant produced in court the clothing he had worn on the night of his arrest and at booking to demonstrate that he did not, in fact, have possession of the ignition key to the car. Defendant also produced a piece of paper identified as the booking sheet which was the only item in his pants pocket.
Ultimately, there was no dispute that cocaine was found in the car occupied by Defendant. The defense centered around whether Defendant was alone, as the police officers testified, or accompanied by a passenger, as Defendant testified. To resolve this case, the trial court was required to make a credibility determination.
Before delivering her verdict, the trial judge stated for the record that she had been leaning toward an acquittal. In the judge's view, Defendant's testimony about a passenger seemed plausible given the discrepancies in the accounts of the traffic stop given by Officers Paxton and Barre. Because Defendant and Officer Paxton had agreed that Paxton was the officer who approached the vehicle on the passenger side, the judge resolved to discount the testimony of Officer Barre altogether. In deciding whether Officer Paxton or Defendant had given the more credible testimony, the judge took into account that the citation written by Officer Barre identified respondent by an alias, Gregory Marshall. In addition to the ticket issued by Officer Barre, which reflected Defendant used an alias at the scene, the trial court pointed to a piece of paper, identified as the booking sheet from the jail, that also reflected Defendant used an alias. Thus, the trial court not only had documentation from Office Barre, but other information to conclude Defendant was untruthful.
Because Defendant had no driver's license for identification, the court concluded that the alias could have come only from Defendant and that Defendant had therefore lied about his name to conceal his prior felony record. The court had cautioned Defendant at the outset of the proceedings, when he waived a jury against defense counsel's advice, that his prior felony record made trial a "life or death matter" if it led to a conviction and enhanced sentencing under La. R.S. 15:529.1. In the court's view, Defendant's apparent lie about his identity discounted his testimony entirely and left the judge with only Officer Paxton, who had given her no articulable reason to believe that he was not telling the truth. The court rendered its verdict accordingly, finding Defendant guilty as charged.
In reversing Defendant's conviction and sentence, the court of appeal acknowledged that "an appellate court must defer to the fact finder's credibility choices and justifiable inferences of fact, and it is not the function of this Court to assess credibility or to reweigh the evidence." (Citations omitted.) Marshall, 04-1143 at 11. However, the court found that, in the present case, "the conclusion reached by the trial court that Mr. Marshall was untruthful and his testimony was not credible, *367 based on the fact that he provided an alias to [the] officers, was unreasonable in light of the trial court's decision to discredit the testimony of Officer Barre." Id. at 14. The court of appeal thus could "find no rational basis for the trial court's determination that the defendant was untruthful, in light of Officer Paxton's testimony that the defendant gave the correct name . . . at the time the defendant was arrested." Id. Because the trial judge could not logically reject Officer Barre's testimony altogether yet use it to discredit Defendant's exculpatory testimony, the court of appeal concluded that the trial judge had erred "in finding that the State satisfied its burden of proof." Id.

DISCUSSION
The court of appeal reached the wrong result because it lost sight of an important corollary of the Jackson standard of review, which permits an appellate court to impinge on the actual fact finder's discretion "only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789 (footnote omitted). Given this narrow compass, the Jackson standard neither permits a reviewing court to second guess the rational credibility determinations of the fact finder at trial, State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983), nor requires a reviewing court to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict. Jackson observed in this regard: "The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the [rational fact finder] standard . . . does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder-if known." Jackson, 443 U.S. at 319 n. 13, 99 S.Ct. at 2789.
In Louisiana, the distinction noted by Jackson plays little or no role in the review of verdicts rendered by a jury because the thought processes of jurors in a criminal case are ordinarily completely beyond review by an appellate court. As noted in State v. Beavers, 364 So.2d 1004, 1009 (La.1978), Louisiana does not subscribe to special verdicts and otherwise follows the rule at common law that jurors generally may not testify with regard to their mental processes in connection with their verdict. See Tanner v. United States, 483 U.S. 107, 117, 107 S.Ct. 2739, 2745-46, 97 L.Ed.2d 90 (1987), now codified in LSA-C.E. art. 606(B). See also, State v. Abney, 347 So.2d 498, 502 (La. 1977), decided under the former La. R.S. 15:470, which was the precursor of LSA-C.E. art. 606(B). The focus of the inquiry under Jackson thus necessarily remains on "not whether this jury should have found the evidence sufficient, but whether any jury could have done so." United States v. Bomski, 125 F.3d 1115, 1117 (7th Cir.1997) citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
On the other hand, in a bench trial, Louisiana law neither requires nor precludes a statement of reasons supporting the verdict returned by the court sitting as the fact finder in the case. State v. Pizzalato, 93-1415, p. 3 (La.App. 1st Cir. 10/7/94), 644 So.2d 712, 714. If a trial judge chooses to do so, a statement of the court's reasons may provide a useful guide for reviewing the sufficiency of the evidence under the Jackson standard. Harris v. Rivera, 454 U.S. 339, 344, 102 S.Ct. 460, 463-64, 70 L.Ed.2d 530 (1981) ("The work of appellate judges is facilitated when trial judges make findings of fact *368 that explain the basis for controversial rulings."). However, given the origins of Jackson in the Due Process Clause, the pertinent inquiry in judge trials must remain, as it does in jury trials, on the rationality of the result and not on the thought processes of the particular fact finder. See Rivera, 454 U.S. at 348, 102 S.Ct. at 466 (Trial judge had no constitutional duty to explain seemingly inconsistent verdicts rendered in a bench trial of co-defendants because "[e]ven assuming that this acquittal [of a co-defendant] was logically inconsistent with the conviction of respondent, respondent, who was found guilty beyond a reasonable doubt after a fair trial, has no constitutional ground to complain that [the co-defendant] was acquitted.").
In the present case, we do not find that the trial judge acted in an irrational manner when she chose to rely on the traffic citation issued by Officer Barre contemporaneously with Defendant's arrest for possession of cocaine, which along with the booking sheet contained an alias, even as she discounted the officer's in-court testimony approximately four months later when the witness attributed his somewhat wayward recall of the arrest to a bout of the flu. Where the testimony of a witness is impeached in part, the trier of fact has discretion to accept those portions of testimony deemed credible. Stewart v. Allstate Ins. Co., 285 So.2d 556, 559 (La.App. 1 Cir.1973).[3] Thus, it is entirely reasonable for the trial judge to discount Officer Barre's trial testimony four months after the incident yet rely upon the contemporaneous traffic ticket and the booking sheet.
Officer Paxton testified that Defendant identified himself properly as Keith Marshall, but there was conflict in the evidence at trial on this point.[4] Even *369 if we may assume, arguendo, that the name used by Defendant to identify himself at the time of arrest provided an unreliable basis on which to make rational credibility choices, the trial court was acutely aware of Defendant's three prior felony convictions, the existence of which Defendant freely conceded during his direct testimony. These convictions provided him with a powerful incentive to extricate himself from the present prosecution and avoid the prospect of enhanced sentencing as a habitual offender. The trial court specifically mentioned Defendant's record as providing Defendant with an incentive to be untruthful. That prior felony record provided a reliable basis in Louisiana law for the court, as well as any rational fact finder, to discount Defendant's exculpatory testimony. See LSA-C.E. art. 609.1(A), which governs attacks on a witness's general credibility ("In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions."); State v. Sweeney, 443 So.2d 522, 529 (La.1983)("Irrespective of its relevance to the present prosecution, a conviction per se historically is a relevant factor for the trier of fact's evaluation of a witness' credibility."). Overall, as the judge observed and as any rational fact finder might also conclude, the evidence presented at trial provided no articulable reason for doubting the credibility of Officer Paxton's testimony, parts of which were corroborated by Defendant's own account, as a basis for finding Defendant guilty as charged.
Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Legrand, 864 So.2d 89, 94 (La.2003). Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
Although some discrepancy exists as to who approached which side of the car, both officers testified that they stopped Defendant because his taillights were off at 9:00 p.m. There was no evidence to contradict this fact. Both officers controverted Defendant's testimony that he was driving with a passenger. Also, the discovery of cocaine in the car is not disputed. Considering these facts in a light most favorable to the prosecution, it was reasonable for the trial judge to rely on Officer Paxton's testimony to find Defendant guilty. Ultimately, the trial court stated there was no reason to believe that Officer Paxton was not telling the truth and that Defendant's testimony corroborated what Officer Paxton said, except as to the passenger being in the car with Defendant.
The trial court, therefore, rendered a verdict that any rational trier of fact considering the same evidence in a light most favorable to the State could also have returned.

CONCLUSION
Rather than review the evidence, the court of appeal scrutinized the reasoning process which the trial court engaged in to make its determination. The appellate court interposed its opinion and supplanted the trial judge's verdict even though there was sufficient evidence to convict Defendant. Credibility calls are within the fact finder's discretion and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d at 943. Accordingly, the court of appeal erred by reversing Defendant's conviction and sentence based on insufficient evidence. The judgment of the court of appeal is therefore reversed, Defendant's conviction and sentence are reinstated, and this case is *370 remanded to the district court for purposes of execution of sentence.[5]
REVERSED AND REMANDED.
JOHNSON, J., dissents and assigns reasons.
I respectfully dissent.
In this case, the trial court essentially had to make two credibility determinations. One centered around whether defendant Keith Marshall was alone in the vehicle, as testified to by the two arresting Police Officers, Curtis Barre' and Marchant Paxton, or whether the defendant was the driver of the vehicle. Defendant claimed when arrested, he was driving the vehicle at the request of the owner, Tyreen Giles, who he contends was his passenger. At trial, both officers testified that they walked to the passenger side when they stopped the vehicle, which appears incredible when both maintained there was no passenger in the vehicle. Why would both officers approach the passenger side rather than the driver side. The trial judge commented, . . . "[I]nitially, that led me to believe that there must have been somebody sitting over there on the passenger side for both police officers to go over to the passenger side. There must have been somebody there." ". . . [I]n essence, I asked Officer Barre' how both of them ended up on that side, which meant somebody was going to have to go get Mr. Marshall off of the driver's side." Further, the trial judge noted that "The drugs came from somewhere. This mystery person that may or may not have been there, maybe it was just bad police work that both of them ended up on the same side, if that did happen." The court ultimately decided that Officer Barre was not credible, and stated ". . . we've thrown Officer Barre's testimony out."
The second credibility determination that the court needed to make was whether the defendant gave an alias when he was arrested. The record shows that it was Officer Barre who did the paper work and listed the defendant by the name of Gregory Marshall, and not Keith Marshall, on the citation and the booking sheet. I agree with the appellate court that the conclusion reached by the trial court that the defendant was untruthful, and his testimony was not credible, based on the fact that he provided an alias to the police officers, was unreasonable in light of the trial court's decision to discredit the testimony of Officer Barre'. After making a credibility determination to disregard Officer Barre's testimony, the court could not rationally utilize the same testimony to discredit the defendant. I would affirm the reversal of the defendant's conviction and sentence.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir.2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099. Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to *371 ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id. "[T]he Jackson standard does not serve as a vehicle for a reviewing court to second-guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
An appellate court must defer to the fact finder's credibility choices and justifiable inferences of fact, State v. Lee, 94-2584, p. 7 (La.App.4Cir.1/19/96), 668 So.2d 420, 426, and it is not the function of the appellate court to access credibility. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022; State v. Silman, 95-0154 (La.11/27/95, 663 So.2d 27); State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. The credibility of witnesses will not be reweighed on appeal. State v. Hotoph, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062, writ denied, 00-0150 (La.6/30/00), 765 So.2d 1066.
NOTES
[1] In State v. Captville, 448 So.2d 676, 678 (La.1984), the court stated:

In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
[2] Before trial, defense counsel informed the trial judge that the passenger had been subpoenaed numerous times; however, he had refused to appear. The trial judge issued an instanter subpoena during the proceedings, but the subpoena was returned with the notation, "No service, medical reasons." The record reflects defense counsel specifically declined to move for a continuance after conferring with Defendant. Marshall, 04-1143 at 4-5 n. 2.
[3] As to Officer Barre's testimony, the court of appeal seems to have applied the Latin maxim falsus in uno, falsus in omnibus which means "false in one thing, false in all." However, "this is only primitive psychology, and should be completely discarded." JOHN H. WIGMORE, A STUDENTS' TEXTBOOK OF THE LAW OF EVIDENCE 181 (1935); BLACK'S LAW DICTIONARY 620 (7th ed.1999). The falsus in uno doctrine is a harsh rule which should be applied with extreme caution and does not require total rejection of a witness's testimony. See Stewart, 285 So.2 at 559.

Demonstrating Latin acumen, the court in Anglin v. White, 572 So.2d 779, 781 (La.App. 4 Cir.1990), stated:
The application of the rule falsus in uno, falsus in omnibus is a matter within the discretion of the trier of fact; its pertinence in a given matter does not ipso facto require rejection in toto of the testimony of the witness. The weight to be given a witness' remaining testimony is a matter to be determined by the trier of fact in light of the circumstances of each individual case. [Citations omitted.]
Long ago this court specifically rejected a request for a jury instruction applying the doctrine in a criminal matter, finding it was for the fact finder to decide how to weigh a witness' testimony. See State v. Banks, 5 So. 18, 20, 40 La.Ann. 736, 739 (La.1888). The court stated:
[T]he trial judge was . . . correct in refusing the charge requested by counsel for the defense, embodying the legal maxim, falsus in uno, falsus in omnibus,. . . . As the [jurors] were the sole judges of the credibility of the witness, it was their right, untrammeled by any direction, check, or restraint on the part of the court, to adopt their own rules or modes of testing the credit to which the witness was entitled, and of weighting the value of his testimony.
[4] The State points out the record on appeal includes the so-called "gist sheet" of Officer Paxton's police report, also written contemporaneously with Defendant's arrest, which identified Defendant by the name of Gregory Marshall. However, unlike the traffic citation written by Officer Barre which was introduced into evidence at trial, the State did not introduce the gist sheet into evidence at trial or use it to refresh Office Paxton's memory. The report therefore is not part of the record for purposes of reviewing the sufficiency of the evidence and cannot be considered.
[5] In the unpublished opinion, the court of appeal considered and rejected two other assignments of error urged by Defendant.