# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 11-315

STATE OF LOUISIANA

VERSUS

F.F.Q.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 16903-10
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

**John F. DeRosier**
**District Attorney – Fourteenth Judicial District**
**Carla S. Sigler – Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**G. Paul Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, Louisiana  70598**
**(337) 313-0467**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **F.F.Q.**

**GENOVESE, Judge.**

In this criminal case, Defendant, F.F.Q.,[1] appeals his convictions of oral sexual battery and sexual battery, basically alleging insufficiency of the evidence and defective indictment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Defendant was indicted on the charges of forcible rape, oral sexual battery, sexual battery, and cruelty to juveniles. Defendant waived his right to trial by jury and proceeded to bench trial only on the charges of forcible rape, oral sexual battery, and sexual battery. He was found guilty of oral sexual battery, in violation of La.R.S. 14:43.3, and found guilty of sexual battery, in violation of La.R.S. 14:43.1. Thereafter, Defendant pled guilty to the remaining charge of cruelty to juveniles, in violation of La.R.S. 14:93.

Defendant next appeared in court for a habitual offender hearing and sentencing. Following Defendant's admission to a prior felony conviction, the trial court found him to be a second felony habitual offender. Accordingly, Defendant was sentenced to serve twenty years at hard labor for both the oral sexual battery conviction and the sexual battery conviction to run concurrently with each other. Pursuant to Defendant's plea and conviction on the charge of cruelty to juveniles, he was sentenced to serve ten years at hard labor to run consecutively to the sentences imposed for oral sexual battery and sexual battery. The trial court subsequently amended Defendant's sentences and ordered the sentences to be served without benefit of parole, probation, or suspension of sentence.

Defendant has appealed his convictions of oral sexual battery and sexual battery only; he has not appealed his sentences. He presents the following three

---

[1]Pursuant to La.R.S. 46:1844(W), the initials of the parties involved will be used to protect the identity of the victims.

assignments of error.

## ASSIGNMENTS OF ERROR

1. The verdict is suspect because state child protection workers told the alleged victim in this case about a Florida charge against F.F.Q. and how he had allegedly abused another child. This was done specifically to elicit claims of sexual abuse against F.F.Q. when the child had consistently denied them in other interviews. It included showing her details of the Florida allegations from divorce papers. Only after this prejudicial information was discussed with the victim in this case did she allege extreme sexual abuse, including rape, bondage[,] and oral sexual battery.

2. Where alleged child rape victim noted that she decided what to tell the police based on whether appellant F.F.Q. would be in jail, the inconsistent reports by the alleged victim were clearly willfully [sic] created for an ulterior motive. The evidence therefore cannot be considered sufficient to convict of even the responsive verdict of sexual battery.

3. The indictment was fatally flawed and should have been quashed, requiring the [S]tate to re-convene the grand jury, where the process was manipulated for unfair advantage and no other reason. The abuse of the grand jury process violated Due Process of Law and was prejudicial as a matter of law, without regard to contemporaneous objection or consent.

## DISCUSSION OF THE RECORD

Defendant's bench trial began on May 4, 2010. M.R., the alleged victim in this case, was the first witness to testify. She was sixteen years of age at the time of trial. She testified that at the time of the alleged sexual offenses, she was living with J.F., her grandmother, and J.F.'s husband, Defendant herein.

M.R. stated that Defendant had non-consensual sexual intercourse with her on numerous occasions, that he made her perform oral sex on him, that he performed oral sex on her, that he inserted his fingers in her vagina, and that he took nude photos of her on several occasions. M.R. stated that Defendant threatened her and her family and that she believed these threats were real because he had already hurt her and their animals. M.R. stated that the first instance of

sexual contact between her and Defendant occurred on January 28, 2007.  She recalls that date because she had kept a journal while in foster care.

M.R. first reported these allegations to her foster care sister, Chelsea.  Their foster care mother, Ms. Lois, learned of these occurrences when she found M.R.'s journal.  Ms. Lois then took M.R. to the Children's Advocacy Center to talk to Ms. Emily.  Ms. Emily had M.R. examined by Dr. Scott Bergstedt.

Dr. Bergstedt testified that he examined M.R. on May 14, 2008.  M.R. told Dr. Bergstedt that Defendant had her perform oral sex on him, that he had performed oral sex on her, that he had vaginal and anal intercourse with M.R., that he had put his fingers in her vagina, that he had touched her breasts over her clothes, and that he had grabbed her buttocks.  Dr. Bergstedt explained that M.R. stated Defendant had physically abused her and threatened to kill her and her family if she refused to do certain things.  Upon examination, Dr. Bergstedt found that M.R.'s hymen was not intact and that she had healed lacerations suggestive of vaginal penetration and consistent with repetitive penetration.  He also found a scar evidencing a tear as a result of trauma between M.R.'s rectum and vagina.

B.L. testified on behalf of the State.  She stated that when she was eleven, Defendant lived with her mother, that Defendant was physically violent toward her and her mother, that he had non-consensual sex with her, and that he threatened to kill her family members, set their house on fire, and would do anything possible to hurt them if she refused him.

Virginia Tolin, a foster care worker with Child Protection (O.C.S.), testified that M.R. had come into the care of O.C.S. on February 19, 2008, as a result of allegations that Defendant had been physically abusive.  She stated that she and Kathy Hammond had picked M.R. up from her home and had driven her to the foster home.

Ms. Hammond testified that she was an investigator for O.C.S. and had investigated reported allegations of abuse and neglect. Ms. Hammond was made aware of Defendant having been arrested for failure to register as a sex offender following a Florida conviction.

We note that J.F., M.R.'s grandmother and wife of Defendant, testified on Defendant's behalf. She stated that she had never seen Defendant have sexual contact with M.R., flirt with her, or touch her sexually. She conceded that she was aware that M.R. had been physically injured by Defendant, that she had initially lied to the police about the source of the injuries, and that she lied because M.R. did not want Defendant to be arrested.[2]

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we have reviewed the record for any errors patent. We have found no actionable errors patent.

## ASSIGNMENTS OF ERROR NOS. 1 & 2

Defendant contends that the victim's testimony was not credible because her allegations were prompted by information that there were other accusations against him:

> The verdict is suspect because state child protection workers told the alleged victim in this case about a Florida charge against F.F.Q. and how he had allegedly abused another child. This was done specifically to elicit claims of sexual abuse against F.F.Q. when the child had consistently denied them in other interviews. It included showing her details of the Florida allegations from divorce papers. Only after this prejudicial information was discussed with the victim in this case did she allege extreme sexual abuse, including rape, bondage[,] and oral sexual battery.

Defendant also argues that the victim's testimony was not credible because it was inconsistent and because her accusations were prompted by ulterior motives:

---

[2]Several other witnesses testified at trial, but their testimony was cumulative, immaterial, or impertinent.

4

Where alleged child rape victim noted that she decided what to tell the police based on whether appellant F.F.Q. would be in jail, the inconsistent reports by the alleged victim were clearly willfully [sic] created for an ulterior motive. The evidence therefore cannot be considered sufficient to convict of even the responsive verdict of sexual battery

Thus, Defendant is contending that there was insufficient evidence to convict him because the victim should not have been believed.

The Louisiana Supreme Court has discussed the standard of review for evaluating the sufficiency of the evidence on appeal:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).

> [The supreme court has] repeatedly cautioned that due process, rational fact finder test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict. A reviewing court may intrude on the plenary discretion of the fact finder "only to the extent necessary to guarantee the fundamental protection of due process of law."

*State v. Calloway*, 07-2306, p. 10 (La. 1/21/09), 1 So.3d 417, 422 (citations omitted). "The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness . . . ." *State v. Higgins*, 03-1980, p. 17 (La. 4/1/05), 898 So.2d 1219, 1232, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182 (2005) (quoting *State v. Mussall*, 523 So.2d 1305, 1310

(La.1988)). "Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence." *State v. Marshall*, 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369, *cert. denied*, 552 U.S. 905, 128 S.Ct. 239 (2007) (citing *State v. Vessell*, 450 So.2d 938 (La.1984)).

In its reasons for ruling, the trial court specifically addressed the issue of M.R.'s credibility:

> And I understand the concerns that Mr. Clemons had . . . about [M.R.'s] stories in many cases being all over the place. And I looked for – I looked at all those inconsistencies and I looked for what was consistent and what made sense to me, and what made sense to me was Dr. Bergstedt's testimony that her hymen had been ruptured. And I gave the [D]efendant wide latitude in asking about other instances of sexual intercourse, over the objection of the State. And I heard no one come in and say that they had had sexual intercourse with this girl. The only person she ever identified as having sexual intercourse with her was the [D]efendant . . . . [M.R.] apparently grew up in a home where pornography was allowed to exist, where she was allowed to view it, whether intentionally or unintentionally. She grew up in a home where the person she called mother allowed her to lie to police about what had occurred to her, and maybe even encouraged her to do that, who failed to protect her. I believe [M.R.] when she tells me she had intercourse with [Defendant]. She's too young to be doing that. And the defendant should have known better.

We find the factfinder's credibility determination to be supported by the evidence. A review of the testimony and evidence presented at trial shows that M.R.'s account seemed to vary some about when and how many times pictures were taken plus a few other details. However, she maintained the core facts of the incidents and reported them over and over again to each person she spoke to about the sexual abuse. Moreover, the physical evidence supported those core facts. Therefore, we do not find the trial court's credibility call to be clearly wrong.

Accordingly, these two assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 3

Defendant asserts that his indictment should have been quashed:

The indictment was fatally flawed and should have been quashed,

6

requiring the state to re-convene the grand jury, where the process was manipulated for unfair advantage and no other reason. The abuse of the grand jury process violated Due Process of Law and was prejudicial as a matter of law, without regard to contemporaneous objection or consent.

Defendant does not brief this assignment of error. "All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." Uniform Rules—Courts of Appeal, Rule 2–12.4. Accordingly, this assignment of error is deemed abandoned.

## DISPOSITION

Defendant's convictions are affirmed.

**AFFIRMED.**