JAMES F. McKAY III, Judge.
|, STATEMENT OF CASE
On January 15, 2010, the defendant, Jemdry Guity, was charged by bill of information with aggravated battery with a dangerous weapon. The defendant pled not guilty at his arraignment on February 2, 2010. After a hearing on May 20, 2010, the trial court denied the defendant’s motion to suppress identification and found probable cause. On October 12, 2010, the State provided the defendant with a Pri-eur[1] notice. The trial court conducted a Prieur hearing on November 15, 2010, and granted the State’s motion on November 17, 2010, to which the defendant objected. After a jury trial on January 31, 2011, the defendant was found guilty of aggravated battery. On February 10, 2011, the defendant was sentenced to five years at hard labor, with credit for time served. The trial court noted that the defendant had been convicted, and sentenced under, a crime of violence. The defendant filed a motion for appeal on March 23, 2011, which was granted on May 25, 2011.
| .STATEMENT OF FACT
Gilmer Ramos testified that in September 2009, he had an altercation with the defendant, Jemdry Guity, at a soccer field on Washington Avenue. Gilmer Ramos stated that he was playing in a soccer game against the defendant’s team. The defendant started playing “dirty” and did not stop when Gilmer Ramos requested *1115 that he do so. At one point, the defendant almost hit Gilmer Ramos in the head. The two men then began fighting. Other players stopped the fight. The defendant left and went to his car. He returned with a knife. Gilmer Ramos told the defendant to put the knife down and fight like a man. The defendant refused and approached the defendant with the knife. One of the defendant’s friends intervened, spoke with the defendant and convinced the defendant to leave.
A couple of days later, Gilmer Ramos was playing dominos outside his uncle’s house on St. Andrew Street. Four people were playing dominos and several others were standing, waiting for their turn to get into the game. Gilmer Ramos was sitting such that he was facing St. Andrew Street and did not see the defendant walking from Danneel Street. The defendant hit him in the eye and knocked him down. Gilmer Ramos stated it felt like the defendant used something metal to hit him. Gilmer Ramos’s uncle called the police. The EMS took Gilmer Ramos to the hospital. When Gilmer Ramos spoke with the police, he told them that “Pedro” had hit him. Gilmer Ramos identified the defendant as the person who assaulted him. After the incident, he learned that the defendant worked at Louisiana Landscape. Gilmer Ramos went to Louisiana Landscape and saw the defendant working there. Gilmer Ramos then called the police and told them that the person who assaulted him worked at Louisiana Landscape. Gilmer Ramos stated that he could not see out of his left eye after the incident. He testified that [¡.the pain was extreme. Gilmer Ramos stated that he had several surgeries on his eye, but his eye could not be saved.
Walter Martinez testified that he plays soccer with the victim, Gilmer Ramos. He recalled the argument that occurred between Gilmer Ramos and the defendant in September 2009. Walter Martinez stated that the defendant made a dirty play during the game and that the victim and the defendant started fighting. Other players separated the two men. The defendant went to his car and returned with a knife. The victim told the defendant to throw down the knife, and he would fist fight him. The defendant did not discard the knife. The victim was unarmed. The witness identified the defendant as the person who threatened the victim with a knife. Walter Martinez stated that he was not present when the victim was assaulted, but came upon the scene on his way home from work. He did not speak with the police on the scene.
Angel Guevara testified that he is Gil-mer Ramos’s uncle and resides at 2000 St. Andrew Street. The assault occurred in front of his house. On the day of the attack, several people were playing domi-nos in front of his house. He had been playing but had gone inside. He was inside his residence when the assault occurred. When he came out, he saw Gilmer Ramos’ eye bleeding and the defendant was running down St. Andrew Street. The witness stated that he ran after the defendant but the defendant got into a car and left the scene. Angel Guevara called 911 to report the incident.
Wilson Yair Lino Martinez (“Wilson Martinez”) was with Gilmer Ramos when the assault occurred. Wilson Martinez stated that he was playing dominos with Gilmer Ramos when he saw the defendant come around the corner and walk towards Gilmer Ramos. Wilson Martinez testified that the defendant hit Gilmer |4Ramos with a bat and then ran to a car and left the scene. Gilmer Ramos lost consciousness briefly, and Wilson Martinez attempted to provide first aid. Angel Guevara came out of his house and called the police. Wilson *1116 Martínez identified the defendant as the person who assaulted Gilmer Ramos. Wilson Martinez stated that he went with Gilmer Ramos to Louisiana Landscape in November 2009. They saw the defendant working there and called the police. They told the police that the defendant had assaulted Gilmer Ramos. Wilson Martinez testified that the defendant said “just one” when he hit Gilmer Ramos. Wilson Martinez stated that the defendant took the bat with him.
Dr. Daniel Hanson, the chief resident in ophthalmology at LSU/Oschner, treated the victim on September 18, 2009. He testified that the victim’s left eye was swollen shut, and that the victim had no vision in the left eye. The injury to the eye was very severe, and surgery was performed to repair the damage.
On September 18, 2009, Officer John Walker responded to call for assistance at the intersection of St. Andrew and Dan-neel Streets. When the officer arrived on the scene, he observed that the victim’s left eye was swollen shut and there was a severe laceration above his left eye. The victim and a witness, Mr. Ariel, identified the perpetrator of the attack as “Pedro.” The victim stated that he was playing do-minos with some friends when the perpetrator came from behind and struck him on the left side. The victim and the witness also stated that “Pedro” fled the scene in a red four door car with a white stripe on it. They could not identify the make or model of the car. No one on the scene knew the perpetrator’s real name. The officer called for emergency medical services and notified his supervisor and the Persons Crime Detective Unit. Detective Asaro met him at the scene, and they followed the ambulance to University Hospital. Once the victim |awas stabilized, the officers obtained more information from him and gave him a NOPD item number slip to get a police report. During the officer’s investigation, he learned that the victim had a previous argument with the perpetrator at a soccer game.
Detective Armando Asaro investigated the attack against the victim. Detective Asaro stated that when he arrived on the scene, the victim was being transported to the hospital. The officer remained on the scene for a while and then relocated to the hospital. When he arrived at the hospital, the witness was in the emergency room. The victim had a severe laceration to the left eye. The officer spoke with the victim while medical personnel were treating the victim. The victim identified the perpetrator as “Pedro” and described him as being a black male, six feet two inches tall and weighing one hundred seventy pounds. Detective Asaro had learned that the victim was struck with a metal pipe. The officer also spoke with a witness who was with the victim at the hospital. The witness provided a description of the clothing worn by the perpetrator. The witness indicated that the perpetrator was wearing a white tee shirt and blue jeans. The witness also stated that the perpetrator approached the victim from the side and struck the victim with a metal pipe. Detective Asaro testified that he learned the defendant’s real name through the defendant’s sister. A witness had told the officer where the perpetrator’s sister lived. When the officer spoke with the sister, she gave the officer the defendant’s real name but not his address. Detective Asaro stated that he could not find an address for the defendant. The only information that the officer had was that the defendant lived on the west bank.
Deputy Dave Jackson, a member of the Jefferson Parish Sheriff Department, testified that on November 16, 2009, he responded to a call of a suspicious person | Rat Louisiana Landscape. When the officer *1117 arrived on the scene, he met with the victim who told him that there was a person at Louisiana Landscape who had attacked him in New Orleans. Another police officer made phone calls to the NOPD and learned that the incident occurred a couple of months earlier. The victim identified the defendant as the person who attacked him.
Detective Matthew McCleary of the New Orleans Police Department’s Persons Crime Unit became involved in the investigation in November 2009. He had been contacted by a Jefferson Parish Sheriffs Deputy who advised him that they responded to a suspicious person call and that when they arrived, Gilmer Ramos approached them and identified the defendant as the person who had assaulted him. The deputy gave Detective McCleary the defendant’s name and date of birth. Detective McCleary spoke with Gilmer Ramos about twenty minutes after he spoke with the deputy. Gilmer Ramos stated that he was one hundred percent positive that the defendant was the person who attacked him. The officer subsequently obtained an arrest warrant for the defendant.
Jemdry Guity testified that he did not assault Gilmer Ramos. Jemdry Guity admitted that he and Gilmer Ramos had an altercation during a soccer game in Sep-
tember 2009. However, Jemdry Guity stated that he did not mean to hit Gilmer Ramos with his elbow, but Gilmer Ramos did not believe him, and a fight ensued. Jemdry Guity testified that Gilmer Ramos struck him and busted his lip. Jemdry Guity also stated that he did not leave the soccer field and return with a knife. He testified that it was Gilmer Ramos who had a machete and was walking towards him. Jemdry Guity stated that he did not see Gilmer Ramos again until Gilmer Ramos showed up at Louisiana Landscape in November 2009.
^ERRORS PATENT[2]
A review of the record for errors patent reveals none.
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the State did not produce sufficient evidence to prove that he assaulted the victim. He makes the argument that the testimony presented was purely circumstantial and not sufficient to establish that the assault occurred.
The Louisiana Supreme Court set forth the standard for evaluating a claim of insufficient evidence in State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18:
*1118 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, [20]00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to |Rprove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
If rational finders of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all of the evidence most favorable to the prosecution must be adopted. Id. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Johnson, 619 So.2d 1102 (La.App. 4 Cir.1993), citing State v. Rosiere, 488 So.2d 965, 968 (La.1986). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State v. Brumfield, 93-2404, p. 5-6 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316. Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244, 1249 (La.App. 4 Cir.1989). Like all factual matters, credibility determinations are entitled to great weight and will not be disturbed unless contrary to the evidence. Id., citing State v. Vessell, 450 So.2d 938 (La.1984). Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Marshall, 2004-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369.
The defendant attempts to argue that the evidence to show that he assaulted the victim is circumstantial. The defendant relies upon his own testimony that he did not assault the victim, as well as the testimony of Dr. Hanson that the victim’s injuries could have occurred within twenty-four hours before the victim was seen in the hospital room and that he could not say with certainty that the cause of the trauma was from a baseball bat or some type of metal pipe. The defendant also questions the statements obtained by Officer Walker at the scene of the incident. |flThe defendant contends that the statements were obtained through the translations by one witness who did not testify at trial.
The defendant relies upon the case of State v. Shapiro, 431 So.2d 372 (La.1983), in which the Supreme Court reversed a conviction based upon circumstantial evidence. In Shapiro, the defendant was convicted of second degree murder of a woman with whom he lived. The only witness to the shooting was the defendant, who testified that the victim had committed suicide. The Supreme Court concluded that the evidence presented by the State was not sufficient to exclude a reasonable probability that the victim had committed suicide.
*1119 This Court recently distinguished Shapiro in a similar case. In State v. Williams, 2011-0414 (La.App. 4 Cir. 2/29/12) 85 So.3d, 759, the defendant was convicted of attempted second degree murder and aggravated burglary. On appeal, he argued that the State failed to produce sufficient evidence to prove that he was the person who committed the crime. At trial, the victim and other witnesses identified the defendant as the perpetrator. This Court stated:
Even though there was no physical evidence to link the appellant to the crimes, the victim positively identified him as the perpetrator. As noted by this court in State v. Jones, 2011-0649, p. 3 (La.App. 4 Cir. 10/19/11), 76 So.3d 608: “In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 2002-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79. Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293.” In addition, the victim’s son identified the appellant as the man whom he saw hitting his mother in the head when he ran to the kitchen upon hearing his mother scream. The defendant argues that it is debatable whether the victim’s son was coached to identify the defendant as the perpetrator. However, the evidence adduced at trial showed that the son disappeared after the shooting and was found by a police officer hiding in the victim’s bed, and all parties testified that neither the victim nor her mother, who arrived on the scene, had an opportunity to speak with the son before he spoke with the police and identified the defendant. Given this |1(ltestimony, the jury could have easily found that the victim’s and her son’s identification of the defendant was credible. As noted by this Court, a fact finder’s credibility determination is entitled to great weight and should not be disturbed unless it is contrary to the evidence. State v. Johnson, 2009-0259 (La.App. 4 Cir. 9/16/09), 22 So.3d 205; State v. Huckabay, 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093. The jury’s credibility finding was not contrary to the evidence.
* ⅜ * *
[I]n State v. Shapiro, 431 So.2d 372 (La.1982), the Court found that the circumstantial evidence adduced at trial was insufficient to support the defendant’s murder conviction.
Here, unlike in the circumstantial evidence cases cited by the defendant, there were two witnesses who positively identified the defendant as the perpetrator. The jury chose to believe their testimony, and there is nothing in the record to show that this finding was contrary to the evidence. The State presented sufficient evidence to support the jury’s finding that the defendant was the person who broke into the victim’s home and shot her.
Williams, 2011-0414, p. 10-11, 85 So.3d 759.
The defendant’s reliance upon Shapiro is without merit because there are eyewitnesses who identified the defendant as the person who assaulted the victim. Gilmer Ramos, Angel Guevara and Wilson Martinez all testified that the defendant was the person who assaulted Gilmer Ramos. Additionally, Dr. Hanson testified that when he first saw Gilmer Ramos, there was blood all over his face and the injury appeared to be fairly recent. Dr. Hanson stated that someone with this type of injury could not walk around for two days *1120 before receiving medical attention. He further testified that such injuries could be caused by a baseball bat or metal rod, without the occurrence of fractures to the face.
The evidence submitted by the State was not circumstantial. There was direct evidence from the victim and eyewitnesses that the defendant assaulted the victim with a baseball bat. The jury was well within its discretion in choosing to accept the testimony of the State’s witnesses, and finding that the defendant committed the offense of aggravated battery.
This assignment of error is without merit.
In ASSIGNMENT OF ERROR NUMBER 2
The defendant argues in his second assignment of error that the trial court erred in granting the State’s Prieur motion and allowing testimony about the altercation which occurred two days prior to the assault. The defendant contends that the State failed to prove by clear and convincing evidence that the incident occurred.
The appellate court will not overturn a ruling by the trial court on the admissibility of evidence of other crimes, absent an abuse of discretion. State v. Mosby, 595 So.2d 1135, 1139 (La.1992). Article 404(B) of the Louisiana Code of Evidence provides the basic rule regarding the use of evidence of “other crimes, wrongs or acts” at trial.
(1) Except as provided in Article 412 [regarding a victim’s past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
Whether the introduction of such evidence is allowed, however, is controlled by La. C.E. art. 403, which states that “[a]l-though relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” In State v. George, 2011-0325, p. 2 (La.2/23/11) 55 So.3d 788, 789, the Louisiana Supreme Court held that “Article 403, though, does not allow for the exclusion of relevant evidence if its probative value is equal to its prejudice.”
In Huddleston v. U.S., 485 U.S. 681, 682, 108 S.Ct. 1496, 1497, 99 L.Ed.2d 771 (1988), the United States Supreme Court, in reviewing the standard of proof for other crimes |12evidence under Federal Rule of Evidence 404(B), concluded that the trial court does not have to make a preliminary finding that the prosecution has proved the “other act” by a preponderance of the evidence before the trial court allows the evidence to be submitted to the jury. The Court held other crimes evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.
We conclude that a preliminary finding by the court that the Government has proved the act by a preponderance of the evidence is not called for under Rule 104(a). This is not to say, however, that the Government may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo. Evidence is admissible under Rule 404(b) only if it is relevant. “Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a mat *1121 ter properly provable in the case.” Advisory Committee’s Notes on Fed.Rule Evid. 401, 28 U.S.C.App., p. 688. In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor. See United States v. Beechum, 582 F.2d 898, 912-913 (C.A.5 1978) (en banc).
Huddleston, 485 U.S. at 689, 108 S.Ct. at 1501.
The introduction of other crimes evidence to show motive is permitted under La. C.E. article 404(B). In State v. Robertson, 615 So.2d 1036 (La.App. 1 Cir. 1993), the trial court allowed the victim’s son to testify about an altercation between the defendant and the victim a few days before the defendant set fire to the victim’s car. The First Circuit found that the trial court did not err in allowing the introduction of testimony about the altercation. The court held that the testimony about the fight established a motive for defendant’s act of setting fire to the victim’s car.
In the present matter, the testimony about the prior altercation between the victim and defendant was used to show motive. Both the victim and the defendant testified about the incident, although each alleged the other to be the aggressor. |13Walter Martinez also testified about the incident, corroborating the victim’s testimony about the incident. Thus, the State produced sufficient evidence that the incident occurred and that the defendant was the aggressor.
This assignment is without merit.
CONCLUSION
Accordingly, we affirm the defendant’s conviction and sentence.
AFFIRMED

. State v. Prieur, 277 So.2d 126 (La.1973).

. The State argues in its appellee brief that the matter must be remanded because the trial court failed to inform the defendant of the time delays for post-conviction relief under La.C.Cr.P. article 930.8. However, this Court does not consider this an error patent which requires remand and does not address this issue unless raised by defendant. In State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, the Louisiana Supreme Court held that La.C.Cr.P. art. 930.8(C), which requires the trial court to inform the defendant of the limitation period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. As decided in State v. McDonald, 2002-2347 (La.App. 4 Cir. 2/19/03), 841 So.2d 38, this Court favors notifying a defendant of his rights under La.C.Cr.P. art. 930.8, when the trial court failed to do so, by advising the defendant of such right in its written appellate opinion. The State raises this issue because it seeks a remand for an imposition of court costs against the defendant. However, the State has not filed its own appeal or answered the present appeal. Thus, this issue is not appropriately before this Court.