PAUL A. BONIN, Judge.
 

 |¡On April 5, 2007, the defendant, Clarence Johnson, was indicted for the second-degree murder of Robert Dawson, a violation of La. R.S. 14:30.1. The defendant’s mother, Vanessa Johnson, was also charged with the same crime
 
 [1]
 
 . The defendant pleaded not guilty at his arraignment on April 11, 2007. On May 9, 2007, the defendant filed Motions to Suppress the Evidence and Identification, which were denied on September 21, 2007. On November 9, 2007, the State elected to sever the two defendants. After a two-day jury trial in August of 2008, the defendant was convicted of second-degree murder. On August 18, 2008, the court sentenced the defendant to life imprisonment without benefit of probation, parole or suspension of sentence with credit for time served. That same day, the defendant filed oral Motions for New Trial and Appeal. The trial court denied the Motion for New Trial and granted the Motion for Appeal. For the reasons which follow, we affirm.
 

 J¿FACTS
 

 Robert Dawson was shot and killed on February 7, 2007, near the Melpomene
 
 *208
 
 Housing Development. New Orleans Police Officer Mark McCraney, a resident of and liaison officer
 
 [2]
 
 to the housing development, received an anonymous phone call on that day shortly after 7:00 p.m. informing him that someone had been shot near the intersection of Simon Bolivar Avenue and Clio Street. When Officer McCraney arrived at the scene, other New Orleans Police Department (NOPD) officers were securing the site. Officer McCraney found the victim lying unconscious in the grass, with several bullet wounds to his torso. As the EMTs placed Robert Dawson in the ambulance, he regained consciousness and told Officer McCraney that the defendant was the man who shot him. Officer McCraney identified the defendant at trial as the person whom Robert Dawson said had shot him. The officer also identified an aerial photograph of the housing development, pointing out the location of the crime scene and his own apartment in relation thereto. Further, Officer McCra-ney also identified pictures of the apartment occupied by Mrs. Vanessa Johnson, the defendant’s mother. He stated that Mrs. Terrell Rayfield and her son, Darryl, lived in the apartment directly across the hall from the Johnson’s apartment.
 

 Tim Carter, a city paramedic, responded to the call regarding the shooting. Carter arrived at the scene at approximately 7:15 p.m. and worked on Robert Dawson’s wounds before transporting him to the hospital. Carter assessed that the ^victim suffered from several bullet wounds, but Carter noted that the victim was coherent and able to answer questions. Carter stated that he also remembered the victim conversing with a police officer as he was placed in the ambulance. Carter recalled that the victim asked him if he was going to die.
 

 On the night of February 7, 2007, NOPD Officer Robert Norris responded to a call of aggravated battery by shooting at Clio Street and Simon Bolivar Avenue. Officer Norris noted that the victim was sitting up in the ambulance, speaking to the EMTs. Officer Norris observed bullet casings, a blue bicycle, and black hat at the scene. He spoke to Officer Robert O’Bryan and observed Officer McCraney at the scene. Officer Norris returned to his vehicle and wrote a report on the incident based on what he learned from police officers at the scene.
 

 Tanesha Santemore, forensic scientist for the NOPD, processed the crime scene by taking photographs, collecting evidence, and eventually rendering a report of her findings. At trial, Ms. Santemore identified pictures of the crime scene noting a blue bicycle, a baseball cap, and five orange cones marking the positions of bullet casings. She also identified in court those items as evidence collected at the crime scene.
 

 Meredith Acosta, expert firearms examiner with the Jefferson Parish Sheriffs Office, tested five bullet casings supplied to her by Officer Keys. Ms. Acosta determined that those casings were from .380 caliber bullets and were fired by a Larsen, model L380 semi-automatic pistol bearing serial number 440721. The bag containing the bullet casings bore Item number B 010707.
 

 | ¿Sergeant Ronald Ruiz, Jr., the lead investigator in the case, arrived at the crime scene upon being notified that the victim had died in surgery. After speaking with witnesses Edward Wilbon and
 
 *209
 
 Darryl Rayfield, Sgt. Ruiz developed defendant Clarence Johnson and his mother, Vanessa Johnson, as suspects. Sgt. Ruiz located a photograph of Vanessa Johnson which he presented to Edward Wilbon in a six-photo lineup. Wilbon identified the picture of Vanessa Johnson as defendant’s mother. Sgt. Ruiz subsequently obtained arrest warrants for the suspects and a search warrant for their apartment. Sgt. Ruiz executed the search warrant at approximately 1:30 a.m. on February 8, 2007, while Vanessa Johnson was at home. Pursuant to the search, Sgt. Ruiz confiscated four pictures of the defendant. Shortly thereafter, Sgt. Ruiz charged Vanessa Johnson with murder. The defendant turned himself in to the police on February 9, 2007.
 

 Edward Wilbon testified that he knew the victim and attended school with the defendant. On the day of the shooting, Wilbon and a few of his friends (among them, Darryl Rayfield), played basketball with the victim on a court in the housing development. During this time, the defendant and the victim got into a fight. When the fight ended, the victim took the defendant’s hat. Wilbon asked the defendant what the dispute was about and suggested to the defendant that he and the victim reconcile their differences. The defendant left the area indicating that he would return. A short while later, Wilbon and his friends went to the grocery store on Clio and Simon Bolivar; soon after, they returned to the basketball court. From there, Wilbon accompanied Darryl Ray-field to Rayfield’s apartment, which was across | Bthe hall from the Johnsons’ apartment. As Wilbon sat in Rayfield’s kitchen, he could hear the defendant speaking with his mother in their apartment. When Wil-bon left Rayfield’s apartment, he noticed that the defendant was dressed in black clothing. Wilbon saw the defendant leave his apartment and drive away in a gold car with two other people. Wilbon returned to the basketball court, where he saw the victim riding his bike through the housing development.
 

 Fifteen minutes later, Wilbon, Rayfield, the victim, and another friend decided to ride their bikes to Wilbon’s aunt’s home near St. Claude Avenue. As the group rode toward Simon Bolivar, Wilbon saw the defendant in the same gold car make a U-turn on Simon Bolivar and drive toward Wilbon and the victim. Wilbon alerted the victim that the defendant was approaching in a car and suggested he leave the area. At that point, Wilbon saw the defendant jump from the back seat of the gold car and shoot the victim. After firing several shots, the defendant jumped back into the back seat of the gold car and rode away. Wilbon did not recognize the driver or the other passenger in the gold car. Wilbon then sought Officer McCraney. When he could not find Officer McCraney, Wilbon returned to comfort the victim until an ambulance transported the victim to the hospital. After Officer McCraney arrived and spoke to the victim, he accompanied Wilbon to the Sixth District police station where Wilbon recounted the day’s events, and he identified the defendant as the shooter. It was then that Wilbon identified a picture of Vanessa Johnson from a photographic lineup. In court, Wilbon identified the defendant as the man Wilbon saw shoot the victim.
 

 |fiDr. Samantha Huber, a forensic pathologist with the Orleans Parish Coroner’s Office, performed the autopsy on the body and determined that the victim suffered from eight gunshot wounds. Two of the wounds hit vital organs — causing the victim to bleed to death. Dr. Huber retrieved several bullets from the body.
 

 The State and the defense stipulated that a .380 Larsen semi-automatic pistol
 
 *210
 
 was recovered on March 23, 2007, but not at the Johnsons’ apartment.
 

 The defense called Sgt. Ronald Ruiz, Jr., to testify about his interaction with Edward Wilbon on the night of the shooting. Sgt. Ruiz recalled that he interviewed Wil-bon twice that night; the first interview was not recorded, but the second interview was. Sgt. Ruiz identified the audio recording of the statements of Officer McCraney and Wilbon taken on the night of the shooting. Sgt. Ruiz stated that he placed the audio tape in Central Evidence and Property at the NOPD.
 

 Edward Wilbon was called by the defense and questioned about statements he made during prior motions hearings in the case. Wilbon denied saying that he saw Vanessa Johnson hand a gun to the defendant, but he did claim to hear Vanessa Johnson tell the defendant to “go get them mother fi: * ⅜ * * When asked by defense counsel if he remembered testifying before the grand jury, Wilbon responded in the negative.
 

 ERRORS PATENT
 

 A review of the records for errors patent reveals none.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 |7In his first assignment of error, the defendant argues that the evidence is insufficient to support his conviction.
 

 To evaluate whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 334, 99 S.Ct. 2781, 2797, 61 L.Ed.2d 560 (1979);
 
 State v. Ragas,
 
 98-0011, p. 13 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106. The Jackson standard applies to all evidence, both direct and circumstantial, to test whether it is sufficient to prove guilt beyond a reasonable doubt to a rational jury.
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 656, citing
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984). The reviewing court, however, is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.
 
 State v. Smith,
 
 600 So.2d 1319, 1324 (La.1992). Within the bounds of rationality, the trier of fact may accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Casey,
 
 99-0023, p. 14 (La.1/26/00), 775 So.2d 1022, 1034. The fact finder’s discretion will be impinged upon “only to the extent necessary to guarantee the fundamental protection of due process of law.”
 
 State v. Marshall,
 
 04-3139, p. 5 (La.11/29/06), 943 So.2d 362, 367, quoting
 
 Jackson, 443
 
 U.S. at 319, 99 S.Ct. at 2789.
 

 When a conviction is based upon circumstantial evidence, La. R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of | ^innocence. Rather than being a separate test from that found in
 
 Jackson v. Virginia,
 
 it is an evidentiary guideline to facilitate appellate review of the ability of a rational juror to find a defendant guilty beyond a reasonable doubt.
 
 State v. Wright,
 
 445 So.2d 1198, 1201 (La.1984).
 

 The defendant in the case
 
 sub judi-ce
 
 was convicted of second degree murder, an offense defined in La. R.S. 14:30.1(A)(1) as: “the killing of a human being: l)[w]hen the offender has a specific intent to kill or cause great bodily harm.... ” Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1);
 
 *211
 

 State v. Harris,
 
 02-2434, p. 4 (La.App. 4 Cir. 5/28/03), 859 So.2d 690, 693.
 

 To support his claim that the evidence is insufficient to support his conviction, defendant points to various contradictions in the testimony of the State’s witnesses. In one instance, the defendant notes that Officer McCraney originally testified that the victim was unconscious when Officer McCraney found him but regained consciousness and made a dying declaration after the EMTs began to administer aid. Officer McCraney said he clearly heard the victim say the defendant shot him and that there was nothing obstructing the victim’s mouth when he made the identification. However, the defendant points out that Tim Carter, one of the EMTs on the scene, testified that the victim was conscious and responsive when Carter found him; that the victim did not make a statement; and that the victim had an oxygen mask on his face during the entire time that the ambulance was on the scene.
 

 | aThe jury considered the foregoing conflicting statements and also heard Officer McCrane/s testimony that the victim stated that the defendant was the person who shot him. Moreover, Edward Wilbon, who had known both the victim and the defendant for several years, testified that he saw the defendant jump from the gold car and shoot the victim several times.
 

 Conflicting testimony as to factual matters is a question of the weight of the evidence — not its sufficiency.
 
 State v. Tillman,
 
 08-0408 p. 17 (La.App. 4 Cir. 3/4/09), 7 So.3d 65, 73, citing
 
 State v. Jones,
 
 537 So.2d 1244, 1249 (La.App. 4 Cir.1989). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness.
 
 Id.
 
 A trier of fact’s determination as to the credibility of a witness is a question of fact that is entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence.
 
 State v. Vessell,
 
 450 So.2d 938, 943 (La.1984).
 

 It is not this court’s role to reassess the credibility of the witnesses.
 
 State v. Davis,
 
 02-1043 p. 3 (La.6/27/03), 848 So.2d 557, 559. In this case, the jury weighed the evidence and was convinced beyond a reasonable doubt that the defendant killed the victim. This assignment of error is without merit.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 In a second assignment, defendant contends that the State withheld exculpatory evidence in violation of
 
 Brady v. Maryland,
 
 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). Specifically, the defense argues that the State withheld grand jury testimony that directly impeached and contradicted the alleged eyewitness to the shooting.
 

 In
 
 Brady v. Maryland,
 
 the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused after receiving a request for the evidence violates a defendant’s due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. For purposes of the State’s due process duty to disclose, no difference exists between exculpatory evidence and impeachment evidence.
 
 State v. Kemp,
 
 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. The
 
 Brady
 
 rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence.
 
 United States v. Bagley,
 
 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985);
 
 State v. Knapper,
 
 579 So.2d 956, 959 (La.1991).
 

 
 *212
 
 In this case, on May 1, 2009, the defendant filed a motion to supplement the record in this Court with transcripts of the grand jury proceedings in connection with this case. That transcript was obtained post-trial and was therefore not considered by the trial court. Furthermore, an appellate court may not consider evidence which is outside the record.
 
 See State v. Hilaire,
 
 216 La. 972, 979-80, 45 So.2d 360, 363 (1950). The defendant’s
 
 Brady
 
 claim is an issue to be addressed in a petition for post-conviction relief, in which an evidentiary hearing can be conducted on the matter.
 
 State v. Neal,
 
 00-0674, p. 14 (La.6/29/01), 796 So.2d 649, 660. The defendant’s motion to Supplement the Record on Appeal is denied.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 By this assignment, the defendant argues that he was denied due process because the complete record was not transcribed in this matter. Defendant maintains that because some of the bench conferences were not transcribed, there |nis no way to determine the content of those discussions, and that this entitles him to a new trial.
 

 Article I, § 19 of the Louisiana Constitution guarantees a defendant a right of appeal “based upon a complete record of all the evidence upon which the judgment is based.” Additionally, La. C. Cr. P. art. 843 provides:
 

 In felony cases, and on motion of the court, the State, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
 

 Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal.
 
 See State v. Robinson,
 
 387 So.2d 1143 (La.1980) (reversal required when record failed to contain the testimony of a State and defense expert witness);
 
 State v. Ford,
 
 338 So.2d 107 (La.1976) (reversal required when the record is missing the testimony of four State witnesses and the
 
 voir dire
 
 of prospective jurors).
 

 However, not all proceedings must be transcribed. Inconsequential omissions or slight inaccuracies do not require reversal.
 
 State v. Goodbier,
 
 367 So.2d 356, 357 (La.1979) (reversal not required when record did not include a transcript of the
 
 voir dire,
 
 and examination and affidavit of court reporter indicated that counsel made no objections during
 
 voir
 
 dire).
 

 In
 
 State v. Hoffman,
 
 98-3118, p. 50 (La.4/11/00), 768 So.2d 542, 586-587, the Louisiana Supreme Court stated:
 

 This court has never articulated a
 
 per se
 
 rule either requiring the recording of bench conferences or exempting them from the scope of La.Code Crim. Proc. art. 843. Still, art. 843’s description of “objections” and “arguments” will normally apply only to objections made in open court and the 112arguments of counsel in closing, because only these objections and arguments rise to a level of materiality sufficient to invoke art. 843. Similarly, Art. I, § 19’s command to record “evidence” does not encompass bench conferences, at least, not ones that do not satisfy the materiality requirements of La.Code Crim. Proc. art. 843. [Footnote omitted.]
 

 In this case, the one recorded bench conference concerned the trial judge’s “ability to hear and understand the witness [Edward Wilbon].” Of the seven
 
 *213
 
 unrecorded bench conferences, one involved defense counsel’s need to “lay [his] predicate” during cross-examination of Officer Mark McCraney regarding an earlier arrest of Vanessa Johnson, a second pertained to relevancy and chain of custody concerning evidence retrieved from the crime scene, a third concerned the stipulation that a .380 Larsen handgun was recovered, but not from the defendant’s apartment, and a fourth addressed the need for a recess. As for the three remaining conferences, one was held in between the testimonies of Tanesha Sante-more and Meredith Acosta, another was held after the testimony of Meredith Acosta but before the testimony of Sgt. Ronald Ruiz, and the last one was held after exhibits had been published to the jury but prior to closing arguments. As the record reflects, at least one bench conference was recorded, suggesting that had the attorneys requested, the others would have been also.
 
 Cf. State v. Deruise,
 
 98-0541, p. 12 (La.4/3/01), 802 So.2d 1224, 1234-1245. However, unlike
 
 Demise,
 
 defense counsel in this case did not lodge any objections with respect to the unrecorded bench conferences and therefore did not preserve those issues for appeal. La. C. Cr. P. art. 841
 
 [3]
 
 ;
 
 State v. Simmons,
 
 99-1154, p. 10 (La.12/06/00), 779 So.2d 856, 863. Nevertheless, absent a showing of prejudice based on the missing portion of the transcripts, a defendant will not be entitled to relief because |1sof an incomplete record.
 
 State v. Castleberry,
 
 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773. Here, the defendant has not indicated the specific prejudice he suffered — nor has he shown that the proceedings were impacted in any manner.
 
 See State v. Hoffman,
 
 98-3118, p. 50 (La.4/11/00), 768 So.2d 542, 587. This assignment is without merit.
 

 ASSIGNMENT OF ERROR NUMBER 4
 

 In a fourth assignment of error, the defendant asserts that his sentence is unconstitutionally excessive. Defendant was convicted of second degree murder and sentenced to life imprisonment, the mandatory sentence for a conviction on that offense. La. R.S. 14:30.1(B). Furthermore, the record does not indicate that the defendant objected to the sentence. Thus, the issue is not preserved for appellate review. La. C. Cr. P. arts. 841, 881.1;
 
 State v. Perron,
 
 01-0214, p. 8 (La.App. 4 Cir. 1/16/02), 806 So.2d 924, 929.
 

 AFFIRMED.
 

 [1]
 

 . Vanessa Johnson was subsequently acquitted on March 3, 2009.
 

 [2]
 

 . In relation to his duties as a liaison officer, Officer McCraney knew the victim, the defendant and witnesses, Darryl Rayfield and Edward Wilbon, as residents of the Melpomene Housing Development. Officer McCraney also knew the locations of the apartments in which the victim, the defendant and the witness, Darryl Rayfield, lived.
 

 [3]
 

 . La. C. Cr. P. art. 841 states: "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.”