# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-303

**STATE OF LOUISIANA**

**VERSUS**

**WESLEY JACKSON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2021-CR-225893-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Ledricka J. Thierry, Judges.

**CONVICTION AFFIRMED.**

**Hon. Charles A. Riddle, III**
**Twelfth Judicial District Attorney**
**Anthony F. Salario**
**Assistant District Attorney**
**Andrea D. Aymond**
**Assistant District Attorney**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Holli Herrle-Castillo**
**LA Appellate Project**
**P.O. Box 2333**
**Marrero, LA 70073**
**(504) 345-2801**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Wesley Jackson**

**GREMILLION, Judge.**

Defendant/appellant, Wesley Jackson, appeals his convictions of second degree cruelty to a juvenile, in violation of La.R.S. 14:93.2.3 and two counts of cruelty to a juvenile, in violation of La.R.S. 14:93. He asserts that the evidence at trial was insufficient to support his conviction. For the reasons that follow, we affirm Defendant's conviction.

## FACTS AND PROCEDURAL POSTURE

On January 24, 2021, Mandy Chatterton called the Avoyelles Parish Sheriff's Office to report a disturbance after she heard a child screaming near her house. The Avoyelles Parish Sheriff's Office directed Ms. Chatterton to call the Marksville Police Department to make the report. Ms. Chatterton anonymously called the police department, then immediately called Officer Wesley Lachney, a patrol officer she knew.

Ms. Chatterton was unable to provide an exact location of the screaming. Officer Lachney drove to the surrounding area with his patrol car's windows down to listen for a child screaming. Captain Brent Couvillion followed for backup purposes. The officers eventually determined that the noise originated from a shed located at 404 Benita Street. As the officers approached the shed, they heard a cracking noise followed by the sounds of a child crying and screaming. An adult woman's voice screamed profanities at the child. Through the shed's window, the officers observed the woman striking a young child with a two-foot-long, one-by-four board. Officer Lachney and Captain Couvillion watched for approximately thirty seconds before running into the shed and taking the board from the woman.

The woman was identified as Briana Chaisson, and the child was determined to be her son, five-year-old K.C.[1]

Officer Lachney placed K.C. in his patrol unit while waiting for the ambulance to arrive to take him to the hospital. Officer Lachney recorded his interaction with K.C., and that video was admitted into evidence. In the video, K.C. is noticeably bleeding from his mouth, his face is severely bruised and swollen, and he is shuddering and crying. When Officer Lachney asks K.C. who did that to his face, K.C. replies: "my dad."

When the officers went to the house, which was twelve to fifteen yards from the shed, they were met by Defendant, Ms. Chaisson's live-in fiancé. Officer Lachney testified that Defendant seemed surprised by the sudden police presence and acted like he did not know what had happened in the shed, despite K.C.'s loud screams and the proximity of the shed. Also in the house were six-year-old C.C. and four-year-old R.C. The officers noticed that R.C. had visible bug bites and bruises on her face. Though the officers did not enter the house, the shed smelled of urine and feces, as a toilet had overflowed, leaving sewage on the floor.

The children were transported to Avoyelles Hospital. Detective Dana Adams with the Marksville Police Department was notified of the alleged child abuse and went to Avoyelles Hospital. When he entered the hospital room, Detective Adams immediately noticed K.C., who was severely bruised on his face and visibly upset. C.C. and R.C. did not appear to be in obvious pain, as they were both walking around the hospital room and talking, but Detective Adams later observed injuries on all three children.

---

[1] Pursuant to La.R.S. 46:1844(W)(1)(a), the victims' initials are used to protect their identities.

Detective Adams photographed the children's injuries, and those photographs were admitted into evidence. The photographs depict the abrasions and bruises on K.C.'s face, his bloodied lip, facial swelling, and bruises that covered his neck, back, buttocks, arms, and legs. Detective Adams described K.C.'s bruises as ranging in color from a deep blue to a greenish tint, reflecting both recent and older bruising. C.C. had bruises on his chin and the back of his head that were greenish in color and in the process of healing, as well as a knot on his forehead. Detective Adams observed bruising and redness on R.C.'s arms, back, buttocks, and face. A case worker with the Office of Child and Family Services (OCS) authorized the children's release to their maternal grandmother's custody and scheduled an interview at the Children's Advocacy Center.

The three children were interviewed by Annelise Eaglin, a forensic interviewer with the Children's Advocacy Center, on February 21, 2021.[2] C.C. described the abuse Defendant inflicted on the children and the various methods Defendant used to punish them. K.C. detailed the injuries he sustained, indicating his whole body had been hurt as a result of Defendant's repeated beatings. R.C. stated she had "bobos" on her stomach after she fell, but due to R.C.'s young age, Ms. Eaglin was unable to comprehensively interview her.

Defendant and Ms. Chaisson were both taken into custody. Detective Adams interviewed them separately as part of his investigation.

On April 13, 2021, Defendant and Ms. Chaisson were charged by bill of information with three counts of second degree cruelty to a juvenile, in violation of La.R.S. 14:93.2.3. The State alleged that Defendant and Ms. Chaisson caused severe

_____

[2]The trial transcript spells Ms. Eaglin's name as "Annalise Eagling," but we use the spelling reflected on her curriculum vitae.

3

bodily injury to Ms. Chaisson's three children through their intentional or criminally negligent mistreatment. On April 15, 2021, Defendant pleaded not guilty to the charges, and the matter was set for a jury trial.

On November 8, 2021, the trial court granted Ms. Chaisson's motion to sever and ordered the co-defendants be tried separately. On November 9, 2021, Defendant's trial began.

The testimonies of Ms. Chatterton, Officer Lachney, Captain Couvillion, Detective Adams, and Ms. Eaglin were summarized above. Additionally, the jury heard the interviews of the children that Ms. Eaglin conducted.

Dr. James Bordelon, Jr. testified as an expert in general surgery and in his capacity as the Avoyelles Parish Coroner. Dr. Bordelon testified that he reviewed the children's medical records from Avoyelles Hospital and the photographs taken at the hospital but never treated them personally. Dr. Bordelon stated that K.C.'s medical records demonstrated that he sustained significant injuries, including a broken jaw, substantial bruising, and blood in his urine, likely as a result of blunt force trauma to the stomach. Although he admitted C.C.'s and R.C.'s injuries were less severe, Dr. Bordelon opined that the injuries went beyond normal child discipline, and the impact that caused the injuries created a substantial risk of death.

Ms. Chatterton testified that she is a neighbor of Defendant and Ms. Chaisson. She occasionally overheard people inside the home arguing at 4:00 or 5:00 a.m. The early morning of January 24, 2021 was such an occasion. Ms. Chatterton was not even aware that there were children in the home until that morning; she had never seen a child playing in the yard. She heard "the little boy" screaming and saw "[h]im and the lady" going in and out of the house. Ms. Chatterton identified Defendant as the man she saw going in and out of the shed.

Ms. Chatterton characterized what she witnessed:

> Well, I didn't see him bring the little boy[;] when I started hearing the crying they were already in the shed.
>
> . . . .
>
> That's when I opened the window and I started watching, they never let the little boy out of the shed but he would go inside and she would stay in the shed and then she hit him and they just take turns[. A]ll I know is that the sounds were very bad.

Ms. Chatterton called the Avoyelles Parish Sheriff's Office. She was directed to call the Marksville Police Department. Rather than having to retell the story to someone at the police department, Ms. Chatterton called Officer Lachney. Ms. Chatterton wanted "to let the law take care of it because if [she] would have, [she] would have been in jail."

At the time of Defendant's trial, Ms. Chaisson was awaiting trial, but she waived her privilege against self-incrimination and agreed to testify against Defendant. Ms. Chaisson stated that she had been in a "toxic" relationship with Defendant for a little over a year at the time of her arrest. She testified that the children's biological father was not present in their lives, and Defendant acted as a father figure to them. The children called Defendant "dad" or "daddy." Ms. Chaisson claimed Defendant's physical abuse of the children accelerated after R.C.'s third birthday and only stopped when the children were removed from the home. Ms. Chaisson did not attempt to shirk the role she played in the children's abuse but maintained that Defendant was violent and alienated her from the rest of her family to assert control.

Ms. Chaisson admitted to "whipping" K.C. with a board on January 24, 2021, but she claimed that she did so because of her fear that Defendant would kill K.C. if she did not intervene to "discipline" him. According to Ms. Chaisson, K.C. had a

toileting accident[3] and threatened to run away earlier that morning, which angered Defendant. Defendant and K.C. went to the shed and when Ms. Chaisson went to check on them, she witnessed Defendant attempting to drown K.C. in an ice chest filled with water. Defendant was forcing K.C.'s head underwater by holding him by the back of his neck. Once Defendant saw her enter the shed, he threw K.C. across the shed and told her "to handle [K.C.] or he would handle it[.]" Ms. Chaisson believed Defendant would kill K.C. because he had severely beat K.C. for having an accident the night before. That night, K.C. had been struck with the same one-by-four board on the back of his legs and his back, and Defendant had punched K.C. in the face. Ms. Chaisson admitted that she popped K.C. on the face but stated that K.C.'s face was already swollen from being punched by Defendant the night before.

Ms. Chaisson testified that while C.C. was usually the one who was abused the most, "it had been a good little while" since his last beating. C.C. was ordinarily hit with the belt, but Ms. Chaisson recalled Defendant kicking C.C. in the chest. Ms. Chaisson testified that Defendant would whip R.C. with a belt and acknowledged R.C.'s buttocks were "tore up" when the State showed her the photographs taken at the hospital. Ms. Chaisson proclaimed both she and Defendant were responsible for abusing the three children.

On cross-examination, Ms. Chaisson admitted that she told two different stories in her statements to police. In her first statement, Ms. Chaisson said she was the disciplinarian in the family and any injuries inflicted on her children were exclusively caused by her disciplining them. Ms. Chaisson claimed she was trying

---

[3] Ms. Chaisson testified that the family had recently moved into the house, which had plumbing issues. While waiting for a plumber to be dispatched, the family was using a small toilet located outside in the shed.

6

to protect Defendant by claiming the sole responsibility at first, but she changed her mind after she thought about her children. Ms. Chaisson implicated Defendant as being a perpetrator in the children's abuse in her second statement to police. Ms. Chaisson testified that OCS had previously investigated her and Defendant after finding a bruise on one of the boys' faces, but the investigation concluded with the children being returned to them.

Defendant did not testify. The State admitted into evidence his interview with Detective Adams. In that statement, Defendant admitted spanking the children with his hand or a belt and giving them a pop on the backs of their heads if they misbehaved, but he asserted that Ms. Chaisson was the primary disciplinarian. He denied ever abusing the children.

Defendant explained that he sometimes wrestled with the children and assumed that K.C. misconstrued this for a punch. When he disciplined the children, Defendant claimed, he made them stand on their toes. Defendant expressed wariness at disciplining the children because they are not his, and, as a registered sex offender, Defendant refrained from things such as bathing the children and changing diapers. Defendant asserted that he suspected Ms. Chaisson of abusing the children, "but they're her kids."

On November 10, 2021, Defendant was unanimously found guilty of one count of second degree cruelty to a juvenile and two counts of cruelty to a juvenile, in violation of La.R.S. 14:93. Defendant was sentenced to twenty years at hard labor for second degree cruelty to a juvenile and five years at hard labor on each count of cruelty to a juvenile. The trial court ordered the sentences be served consecutively.

As stated above, Defendant asserts that the evidence is insufficient to support his convictions.

## DISCUSSION AND ANALYSIS

Defendant's sole assignment of error argues that, while the children were indisputably abused, the evidence was based upon uncorroborated and conflicting statements. Further, Defendant contends that the evidence was circumstantial, and the State failed to exclude every reasonable hypothesis of innocence. When reviewing sufficiency of the evidence, we must determine whether the evidence, viewed in the light most favorable to the State, was sufficient to convince a rational juror that all elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676 (La.1984). A single witness's identification of a defendant as the perpetrator can support a conviction. *See State v. Mussall*, 523 So.2d 1305 (La.1988). A reviewing court may encroach on the fact finder's discretion "only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.* at 1310.

Second degree cruelty to a juvenile is defined by La.R.S. 14:93.2.3(A)(1): "Second degree cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child." At the time of trial, Defendant was thirty-nine years old. K.C. was five years old at the time of the offense. The age-disparity element of the offense was proven beyond a reasonable doubt.

As a result of his abuse, K.C. suffered bilateral mandibular fractures caused by blunt force trauma of sufficient force, according to Dr. Bordelon, to have put K.C. at risk of death. K.C.'s torso was extensively bruised. Some bruises were recent, but others were older, as evidenced by coloration. Many of the bruises exhibited a linear pattern, indicative of having been caused by an object such as a board. K.C.'s

8

urine contained traces of blood consistent with damage to the kidneys from such trauma.

In *State v. Dixon*, 03-160 (La.App. 3 Cir. 6/4/03), 852 So.2d 471, this court held that the whipping of a child with an extension cord that caused wounds to the child's neck, back, legs, and buttocks, as well as a hematoma on the forehead, a laceration on the upper lip, and swelling to the upper and lower lips, supported a jury's determination that the child had suffered serious bodily injury. The wounds K.C. suffered were by no means less serious than the juvenile in *Dixon*. The serious bodily injury element of the offense was proven beyond a reasonable doubt.

Immediately after the officers rescued him from the shed, K.C. told Officer Lachney that his "dad" caused his facial injuries. He likewise told Ms. Eaglin that Defendant — whom K.C. frequently called "daddy" or "dad" — "whooped" his face. Ms. Chatterton saw Defendant enter and exit the shed where K.C. was found. And Ms. Chaisson also testified to Defendant's abuse. Any reasonable juror could have concluded that Defendant was properly identified as a perpetrator of K.C.'s injuries.

We find that the evidence firmly supports Defendant's conviction for second degree cruelty to a juvenile.

Cruelty to a juvenile is defined, in pertinent part, as "[t]he intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child." La.R.S. 14:93(A)(1). The victim need not have sought medical attention in order to find unjustifiable pain and suffering. *State v. C.S.D.*, 08-877 (La.App. 3 Cir. 2/4/09), 4 So.3d 204.

Photographs taken at the time of medical attention show the injuries which were inflicted upon C.C. and R.C. and demonstrate that the children experienced

unjustifiable pain and suffering. Despite the fact that C.C. told Ms. Eaglin it had been a while since his last beating, he still had bruises on his chin, bruises on his head, and a knot on his forehead. The bruises were in the healing process at the time the photographs were taken at the hospital. The photographs of R.C. depict severe bruising and redness on her arms, back, buttocks, and face. The evidence undoubtedly established that C.C. and R.C. experienced unjustifiable pain and suffering.

When interviewed at the Children's Advocacy Center, C.C. identified a perpetrator of his abuse as his "daddy," and he said his daddy's name was Wesley. C.C. told Ms. Eaglin he had been good lately, and dad was not mad at him. However, dad was mad at R.C. for being bad, and according to C.C., Defendant kicks her with his boot when she is bad. C.C. said Defendant also gives R.C. "butt whoopings." At trial, Ms. Chaisson testified that C.C. was the most abused of her children and described that Defendant would hit C.C. with a belt. She also described Defendant kicking C.C. in the chest. Additionally, Ms. Chaisson identified Defendant as the person who whipped R.C. with a belt on the buttocks, stating her buttocks were "tore up" when she saw the photographs depicting R.C.'s recent and widespread bruising. Defendant was sufficiently identified as a perpetrator of C.C.'s and R.C.'s abuse by C.C. and Ms. Chaisson.

The jury in this matter concluded that the identification of Defendant as a perpetrator of the children's abuse was credible. A jury is free to accept or reject, in whole or in part, the testimony of any witness. *See State v. Dorsey,* 10-216 (La. 9/7/11), 74 So.3d 603, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859 (2012); *State v. Johnson,* 09-259 (La.App. 4 Cir. 9/16/09), 22 So.3d 205, *writ denied*, 09-2263 (La. 4/16/10), 31 So.3d 1054. Defendant's statements about disciplining the children

10

provide no justification whatsoever; La.R.S. 14:18(4) justifies reasonable discipline of minors by a parent, tutor, or teacher, and Defendant was none of those. And, given the extent of the demonstrated injuries to the children, one would be hard pressed to characterize them as resulting from reasonable discipline.

## DECREE

Defendant's convictions of second degree cruelty to a juvenile and two counts of cruelty to a juvenile are affirmed.

**CONVICTION AFFIRMED.**

11